(No. 33909.—

C. O. BAPTISTA FILMS, Appellant, *vs.* ROY F. CUMMINS, Director of Labor, Appellee.

*Opinion filed September 25, 1956.*

FISCHER, BOSGRAF AND MACKENZIE, of Chicago, (LEONARD BOSGRAF, and KELLAM FOSTER, of counsel,) for appellant.

LATHAM CASTLE, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellee.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

This case is here on direct appeal to review a decision of the circuit court of Cook County, which, in an administrative review proceeding, held the plaintiff corporation, C. O. Baptista Films, was not a corporation organized and operated exclusively for religious or educational purposes without private beneficial inurement, and hence not entitled to an exemption under section 221 of the Unemployment Compensation Act. Ill. Rev. Stat. 1953, chap. 48, par. 331.

The plaintiff claims (1) it was such a corporation, (2) a prior adjudication of nontaxability involving a predecessor corporation is *res judicata*, (3) another prior adjudication denying benefits under the act to employees of the present corporation is also *res judicata*, (4) the

defendant is estopped by a prior withdrawal of assessments, and (5) claims for the tax year 1948 are barred by limitations.

The defendant contends (1) the plaintiff does not qualify for exemption under any of the three issues involved—organization, operation, or beneficial disposition of earnings, (2, 3) neither prior decision is *res judicata,* and (4, 5) estoppel and limitations are not valid defenses here.

The assessments, covering the years 1948 through 1952 and the first three quarters of 1953, totaled $10,688.49, and, with interest and penalties, resulted in a judgment against the plaintiff for $16,732.75.

In 1943, Scriptures Visualized Institute was organized as an Illinois not-for-profit corporation "to teach the Bible" by means of sound and silent films and other audio-visual aids and literature. About January 1, 1946, pursuant to an agreement between Scriptures Visualized Institute, C. O. Baptista and another corporation termed C. O. Baptista Films, all assets of Scriptures Visualized Institute and all assets of C. O. Baptista used by it, were transferred to C. O. Baptista Films, the plaintiff.

The new corporation's purposes and powers were substantially the same as those of Scriptures Visualized Institute, except that it was also to buy, sell and deal in "inventions" for recording and reproducing sound films and to consolidate the two former entities.

For the assets which he transferred (amounting to $101,755), Baptista received $300 monthly rental, plus extensive powers of management and control. These included the power to censor, cancel and revise all materials, to supervise all production, to control all expenditures, to hire and fire employees, to fix salaries, and to control all sales and transfers of real and personal property. His salary was fixed at $75 per week. The incorporators were Baptista himself, the head artist, and the bookkeeper, who

were all full-time employees, sole directors, and president, vice-president and secretary, respectively.

In 1948, the corporation began manufacturing and selling sound film projectors and marketed them and other items in competition with commercial producers and dealers. These items included tape recorders, microphones, motion picture screens, projection lamps, projection lenses, projector stands, amplifiers, tubes, duplicating films, extension cords, reels and cans. Its total income has been roughly as follows: from sales of equipment, 30 per cent; from sales of films, 25 per cent; from film rentals, 30 per cent; from other sources, 15 per cent. After the transfers in 1946, the corporation had net assets of $125,000, but by 1952 it net assets had increased to $540,000.

The plaintiff's materials are religious in nature, being related to Biblical stories and teachings, and its catalog recites aims and purposes of a strictly religious character. However, no director or officer is a minister of any religious group; and despite declarations of noncommercial purpose, the corporation's sales, rental and credit policies quite closely resemble those of an efficient commercial business, and many of its sales and distributions are in competition with commercial dealers.

There is nothing in the plaintiff's charter or by-laws which impresses its assets with a trust, or which requires that on dissolution distribution be made to an exclusively religious or educational organization. C. O. Baptista personally has unlimited authority over all sales and transfers of real and personal property of every description.

On these facts, we are governed by *Scripture Press Foundation* v. *Annunzio*, 414 Ill. 339, decided in 1953, in which the taxability of such an institution was considered at length. While the religious character of the materials handled is some evidence of religious operation, their marketing exclusively or chiefly to intermediaries such as church organizations or ministers does not permit of an

exemption for a claimant which itself has no direct contact with any congregation, communicant or other ultimate religious recipient. Similarly, control of the claimant by private persons rather than by an ordained minister or a religious body is evidence of nonreligious organizational structure. Finally, efficient businesslike operations, with aggressive advertising and pricing competitive with commercial rivals (as in the case of the equipment here), all based on a sound capital structure and resulting in profits not committed to any religious shareholder or beneficiary, are substantial evidence of nonreligious operation.

In view of Baptista's complete control, we are unimpressed by a distinction based on small salaries here and large salaries in the *Scripture Press case*.

The plaintiff corporation rents films and equipment to religious groups, but does not itself minister to anyone in the ordinary sense; hence, in this respect it is in much the same position as "any other commercial service organization furnishing to a religious institution necessary servives such as fuel, lights, building material or any other item necessary to its ordinary and customary functioning." (*Scripture Press Foundation* v. *Annunzio*, 414 Ill. 339, 356.) In addition, the plaintiff markets its commodities at a substantial profit in a businesslike operation; and while its legal structure is nonprofit, it is, in fact, controlled by one private person who may dispose of earnings and accumulations as he sees fit.

Therefore, we conclude that the plaintiff failed to establish a right to an exemption as being organized and operated exclusively for religious purposes. Nor is there any evidence in this record indicating that it is organized and operated exclusively for educational purposes. Cf. *People ex rel. Brenza* v. *Turnverein Lincoln*, 8 Ill.2d 198.

Next, neither prior adjudication relied on by the plaintiff is *res judicata* here. In Scriptures Visualized Institute v. Director of Labor, decided in 1946 by the circuit court

of Cook County, the institute was held tax exempt for the years 1942 and 1943. But the present corporation, although a successor to the institute, is also a successor to Baptista's sole proprietorship, acquiring 90 per cent of its assets from him. There is no prior adjudication as to him, so the parties are not the same. In addition, the subject matter has been materially altered by the fact that the operations here are far more commercial in character.

Even if it were considered that the parties and subject matter are the same, with a collateral estoppel against a different decision for a different year's tax, this court's decision in the *Scripture Press case* intervened to bar any such vested interest in the prior decision. *Commissioner of Internal Revenue* v. *Sunnen,* 333 U.S. 591; *Burrows Co.* v. *Hollingsworth,* 415 Ill. 202.

The same reasoning disposes of plaintiff's argument that a holding of taxability is precluded by the Department referee's decision against benefits to the plaintiff's employees and by the finding and necessary premise there that the plaintiff was exempt as a religious corporation.

The claim that the Director is estopped by a withdrawal of assessments for 1948, 1949 and 1950, is likewise untenable. The Director's letter withdrawing the assessments for those years followed the only decided case involving a religious purpose under the act concerned, namely, the circuit court decision involving Scriptures Visualized Institute. However, in the *Scripture Press case* this court gave a definitive interpretation which was directly opposed to the circuit court decision, and the Director reinstated the assessments so as to conform to the declared law. "(I)t is fundamental that an erroneous construction of a statute by an administrative agency is not binding upon the courts," (*Winakor* v. *Annunzio,* 409 Ill. 236, 248,) particularly where it is not based on "high judicial authority." Cf. *Pressed Steel Car Co.* v. *Lyons,* 7 Ill.2d 95, 106.

The plaintiff's asserted limitations defense to the 1948

assessments falls because of the corporation's failure to file a report with the Director setting forth its employment experience for that year. (Ill. Rev. Stat. 1953, chap. 48, par. 687.) But since it was considered exempt at the time, the plaintiff argues that it had no duty to file the report in order to start the running of the five-year limitations statute. As noted, however, an erroneous administrative position is no fetter to the State or the courts on the facts of this case, (*Winakor* v. *Annunzio,* 409 Ill. 236; *Superior Coal Co.* v. *Department of Revenue,* 4 Ill.2d 459,) and likewise is no shield to the taxpayer, since estoppel cannot be used to revive against the State a defense otherwise unavailable. See *People ex rel. Ames* v. *Marx,* 370 Ill. 264; *Massell* v. *Daley,* 404 Ill. 479.

Accordingly, the judgment is affirmed as to all the tax assessed, and as to interest and penalties due from June 24, 1953, when on the basis of the *Scripture Press case* the plaintiff was notified to file reports and pay tax contributions. For the period prior to that date, however, we do not think it just to allow, in addition to the tax, interest and penalties as well. (Cf. *Burrows Co.* v. *Hollingsworth,* 415 Ill. 202, 214.) While an administrative error of this type should not be a shield for the taxpayer, neither should it provide a windfall for the State. Therefore, the judgment is reversed as to interest and penalties prior to that date.

The judgment of the circuit court of Cook County is affirmed in part and reversed in part, and the cause is remanded with directions to enter judgment in accord with this opinion.

*Affirmed in part and reversed in part and remanded, with directions.*