THE CITY OF DES PLAINES, Plaintiff-Appellant, *v.* THE METROPOLITAN
SANITARY DISTRICT OF GREATER CHICAGO, Defendant-Appellee.

(No. 58604;

First District (2nd Division)—December 4, 1973.

*Rehearing denied January 2, 1974.*

Robert J. Di Leonardi, of Des Plaines, for appellant.

Allen S. Lavin, of Chicago (Vincent P. Flood and James B. Murray, of
counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the
court:

This is an appeal from an order of the Circuit Court of Cook County
dismissing an action for a declaratory judgment and injunction on the
basis of res judicata.

Plaintiff, the City of Des Plaines (hereafter called City), filed a complaint in the Circuit Court on August 9, 1972, against the defendant, Metropolitan Sanitary District (hereafter called District), seeking a declaratory judgment that the City, as a home rule unit of local government, may regulate the land use activities of the District, a special district under the 1970 Illinois constitution, and seeking an injunction restraining the District from erecting and operating a sewage treatment plant in derogation of the City's zoning ordinance.

The District moved to dismiss the complaint on the basis that a prior decision of the Illinois Supreme Court (*City of Des Plaines v. Metropolitan Sanitary District*, 48 Ill.2d 11, 268 N.E.2d 428,) barred the action under the doctrine of res judicata. In support of its motion defendant offered a copy of the complaint filed by the City against the District on November 4, 1966, alleging that the cause of action and issues set forth in the complaint as well as the parties thereto, are identical to the present action.

Plaintiff resisted the motion on the ground that the present action, unlike the first, is founded on the home rule provisions of Article VII of the 1970 Illinois Constitution which established a new legal relationship between the parties resulting in new questions of law supported by different legal theories. After argument by counsel for both parties, the trial court entered an order granting the District's motion to dismiss.

An examination of the record indicates that the complaint filed on August 9, 1972, differs from the action filed on November 4, 1966, only in respect to the designation of the parties under home rule along with their attendant powers and limitations. Therefore, the sole question befor this court is whether the intervention of the home rule provisions of the 1970 Illinois Constitution precludes application of the res judicata doctrine.

■■ The doctrine of res judicata is of judicial origin and has been characterized as a rule of convenience designed to prevent repetitious law suits over matters which have once been decided and which have remained substantially static, factually and legally, but which must give way where there has been a change in the fundamental controlling legal principles. (See, *Commissioner v. Sunnen*, 333 U.S. 591, 597-99, 92 L.Ed. 898, 68 S.Ct. 715.) Similarly, the rule prevails in Illinois that res judicata extends only to the facts and conditions as they were at the time a judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts or conditions intervene before the second action, establishing a new basis for the claims and defenses of the parties respectfully, the issues are no longer the same, and hence the former judgment cannot be pleaded as a

bar in the subsequent action. (*People ex rel. Cherry Valley Fire Protection District v. City of Rockford*, 122 Ill.App.2d 272, 258 N.E.2d 577; *Seno v. Franke*, 16 Ill.App.2d 39, 147 N.E.2d 469.) Even though the basic facts have not changed, it is generally accepted that res judicata does not operate as an automatic bar where between the time of the first judgment and the second there has been an intervening decision or a change in the law creating an altered situation. (*State Farm Mutual Automobile Insurance Co. v. Duel*, 324 U.S. 154, 89 L.Ed. 812, 65 S.Ct. 573; *C. O. Baptista Films v. Cummins*, 9 Ill.2d 259, 137 N.E.2d 393; *Deke v. Huenkemeier*, 289 Ill. 148, 124 N.E. 381), or where the party relitigates his claim on a new and more correct theory reflecting an essential difference in the two causes of action. (*Gudgel v. St. Louis Fire & Marine Insurance Co.*, 1 Ill.App.3d 765, 274 N.E.2d 597; *Ivanhoe v. Buda Co.*, 247 Ill.App. 336.) However, the scope and operation of the above rules must always be viewed in light of the basic premises that res judicata bars a second action where there is identity of parties, issues, and subject matter (*American National Bank & Trust Co. v. Zoning Board of Appeals*, 12 Ill.App.3d 794, 299 N.E.2d 147); and that the party cannot evade the rule by merely changing the form of his complaint. It is within this context that the effect of the home rule provisions on the issues of the original action must be determined.

In determining the effect of home rule in the instant case, it is appropriate to note the legal relationship between the parties prior to its adoption. Until the 1970 Constitution, cities and villages had no inherent powers and could not act legally in any matter unless expressly or impliedly authorized by state statute. (See, *e.g.*, *Ives v. City of Chicago*, 30 Ill.2d 582, 198 N.E.2d 518.) Further, under this rule of legislative supremacy, statutory grants of power were narrowly construed in accordance with so-called "Dillon's Rule":

> "It is a general and undisputed proposition of law that *a municipal corporation possesses and can exercise the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." Dillon, Municipal Corporations (5th ed. 1911), 448-50.

It was within this legal setting that the Supreme Court adjudicated the rights of the present parties in *City of Des Plaines v. Metropolitan Sanitary District*, 48 Ill.2d 11. In that case, the City sought to enforce its

zoning ordinance against the District on the theory that the separate statutory powers of each party gave both the City and the District an equal right to discharge these individual statutory obligations without unreasonable interference from the other and that, therefore, the District could not locate its sewage treatment plant within the city in total disregard of the City's zoning ordinance. Under the then-existing law, both parties were mere creatures of the legislature occupying positions of parallel strength in their relationship to each other and thus, the City argued, neither one could completely ignore the power of the other.

The court found, however, that the statute empowering the District to acquire land by condemnation within its corporate limits "clearly authorized the taking of the property in question in the City of Des Plaines." (48 Ill.2d 11, 14.) The court further stated: "If the district is exercising power within the statutory grant, such exercise is not subject to zoning restrictions imposed by the host municipality." 48 Ill.2d 11, 14.

In reaching its conclusion, the court quoted *Decatur Park District v. Becker*, 368 Ill. 442, 14 N.E.2d 490, which held that the Park District could condemn property for park purposes notwithstanding the fact the purpose was not included in the zoning restrictions: "The appellee is given authority to locate parks, and the city is given authority to adopt a zoning ordinance. The Legislature did not empower cities to exclude parks from residence districts. The two statutes should be construed so that the ordinance of the Park District and the zoning ordinance will be given effect in their respective fields of operation." (48 Ill.2d 11, 13.) Implicit in the decision of the Illinois Supreme Court in the earlier case was a specific application of the then-existing law enunciated in Dillon's Rule—that is, a general legislative grant of power given to a municipal corporation must yield to a specific grant in another governmental unit where the two are in apparent conflict.

Subsequent to the decision in the *Des Plaines* case, the people adopted the Illinois Constitution of 1970 which expressly grants to home rule cities and villages the following broad authority in Section 6(a) of Article VII:

> "[A] home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; * * *."

The grant of inherent power to municipalities pursuant to Section 6(a) has dramatically altered the concept of legislative supremacy, and the negative presumption of local authority under the Dillon Rule has been reversed by Section 6(m) which provides: "Powers and functions of home rule units shall be construed liberally."

Unlike the City, whose municipal home rule authority is now of a constitutional stature, special districts and other limited-function units of government remain as before—possessed of no inherent, broad powers, but exist solely at the pleasure of the legislature. Section 8 of Article VII provides in relevant part: "[S]pecial districts and units, designated by law as units of local government, which exercise limited governmental powers or powers in respect to limited governmental subjects shall have only powers granted by law."

The constitutional restructuring of local government clearly separates those units of local government which remain dependent upon the legislature for their power from the home rule units whose power is derived from the constitution. That this restructuring alters the legal relationship between the City and the District in the present case is evident; equally apparent is the fact the home rule changes the entire context in which the municipal-special district conflict arises.

Although the Local Government Article does not deal with intergovernmental regulation, it is apparent that the broad grant of authority in Section 6(a) is subject to legislative control only through the following specified procedures:

"§ 6(g) The General Assembly by a law approved by the vote of three-fifths of the members elected to each house may deny or limit the power to tax and any other power or function of a home rule unit not exercised or performed by the State other than a power or function specified in subsection (1) of this section.

(h) The General Assembly may provide specifically by law for the exclusive exercise by the State of any power or function of a home rule unit * * *.

(i) Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive."

Sections 6(g), (h), and (i) attempt to specify the exact procedures whereby statute authority may replace local authority. Significant to the municipal-special district conflict are those portions of 6(h) and (i) which require the General Assembly to specify when the state is to exercise its powers exclusively or when local power is to be excluded. The purpose of these provisions, as stated in the Local Government Report 71, 7 Proceedings 1645, is to reduce the circumstances under which local home rule authority is preempted by judicial interpretation of legislative intent:

"The purpose of distinguishing between statutes which express

exclusively [sic, "exclusivity"] and those which do not is to minimize the area where courts might have to struggle to find legislative intent. It is a guideline to the courts that concurrent local action is to be permitted unless a contrary legislative intent is expressed."

The clear import of these provisions is not only to ensure that the state may act, through the General Assembly, when state interests require, but also to ensure that absent such state legislative action, local powers will not be impaired.

■■ The effect of the Local Government Article on the issue of res judicata in the instant case is of consequence. Prior to its enactment the issue of the applicability of the City's zoning power to the District's power of eminent domain revolved on the statutory interpretation of the relative delegations of legislative power. No longer is this true. The City, as a home rule unit, presently possesses inherent power to effectuate its zoning regulations, while the District, as a special district in the hierarchy of local governmental units, possesses its power of eminent domain solely by virtue of specific legislative grant. Further, any legislative diminution of the City's power can be brought about only by the procedures specified in Section 6 of Article VII. It cannot be said that the present situation is one which has remained factually and legally static. The legal relationship of the parties, the issues advanced, and the questions of law which must be decided have been significantly altered by the present Illinois Constitution. The City's claim is founded on a right not in existence at the time of the prior litigation. The doctrine of res judicata is intended to prevent repetitious lawsuits, but not to abrogate unlitigated rights and duties. Therefore, we conclude that its application in the present case is inappropriate.

The judgment is therefore reversed and the cause remanded with directions that the trial court deny the District's motion to dismiss the complaint and restore the cause to the docket for further proceedings.

Reversed and remanded with directions.

LEIGHTON and DOWNING, JJ., concur.