PEABODY COAL COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

First District (2nd Division)   No. 62908

Opinion filed May 10, 1977.—Rehearing denied June 15, 1977.

Henry L. Pitts, Joseph S. Wright, Jr., Clifton A. Lake, and Michael D. Freeborn, all of Rooks, Pitts, Fullagar and Poust, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Richard W. Cosby, Michael A. Benedetto, Jr., and Marvin I. Medintz, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE PERLIN delivered the opinion of the court:

This is an appeal from an order of the Illinois Pollution Control Board (the Board) pursuant to sections 29 and 41 of the Illinois Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, pars. 1029, 1041) (the Act). Petitioner, Peabody Coal Company, appeals contending that the Board erred when it dismissed the administrative proceedings without a hearing.

We affirm.

Since 1972 petitioner, Peabody Coal Company, has submitted to the Illinois Environmental Protection Agency (the Agency) numerous applications for permits to operate its various coal mines in the State of

Illinois. (Illinois Pollution Control Board Regulations, ch. 4.) Eight such permit applications were involved in the instant administrative proceedings before the Board, seven of which were issued by the Agency.

On May 21, 1975, the Agency denied a permit to petitioner on its application for its Will Scarlet Mine. The Agency reasoned that "Sections 12 and 39 of the Environmental Protection Act prohibit the Agency from issuing a permit for any facility which would threaten, cause or allow the discharge of contaminants which might cause or tend to cause water pollution in Illinois. * * * Until compliance with the total dissolved solids water quality standard under Rule 203(f), Chapter 3 Water Pollution Regulations of Illinois is demonstrated or a variance is obtained from this regulation, a permit may not be issued."

Petitioner filed a four-count pleading before the Board seeking administrative review of the Agency's denial of petitioner's permit application. The first two counts allege that the Agency improperly imposed certain permit conditions and that the Agency erred in denying a chapter 4 permit to petitioner for its Will Scarlet Mine. The third count seeks review of the Agency's certification of petitioner's National Pollutant Discharge Elimination System (NPDES) permits. The fourth count incorporates the charges of the first count against the Agency and alleges that the Agency's actions are "usurpation of Board authority under Chapter IV, Rule 605(a)."

The Board dismissed all four counts without a hearing. Counts I and II were both dismissed " * * * because of insufficiency in that Complainant has not included sufficient matter which will demonstrate that the mine activities will not violate Rule 605(a) of Chapter 4: Mine Related Pollution and Part 2 of Chapter 3: Water Pollution Regulations." Count III was dismissed for lack of jurisdiction and count IV was dismissed "without prejudice as an inadequate enforcement complaint." Rather than challenge the regulation in counts I and II by way of a regulatory amendment proceeding or file amended or new pleadings for counts I, II and IV, petitioner appealed to this court. Ill. Rev. Stat. 1975, ch. 111½, pars. 1029, 1041.

Petitioner argues that the overall effect of the Agency's actions and the Board's dismissal order was to unconstitutionally deprive petitioner of its property without procedural due process of law. It refers us to *Bell v. Burson* (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586 (suspension of a motor vehicle registration and driver's license), and *Willner v. Committee on Character and Fitness* (1963), 373 U.S. 96, 10 L. Ed. 2d 224, 83 S. Ct. 1175 (denial of a bar admission), in asserting that it was constitutionally entitled to a trial-type administrative hearing for its permit application. This assertion, however, is not applicable to the facts at bar.

Section 39 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a)) authorizes the Agency to "impose such conditions [in granting permits] as may be necessary to accomplish the purposes of this Act, and as are not inconsistent with the regulations promulgated by the Board hereunder." Rule 301 of the Board's chapter 3 Water Pollution Regulations provides that "All waters of the State of Illinois are designated for general use except those designated as Secondary Contact and Indigenous Aquatic Life Waters." Rule 302 then describes "Secondary Contact and Indigenous Aquatic Life Waters." According to Rule 203 of these same chapter 3 regulations, all waters of the State, except those specifically listed in Rule 302, must meet the Rule 203 general use standards. Moreover, section 39 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a)) provides that "it shall be the duty of the Agency to issue such a permit upon proof by the applicant that the facility, equipment * * * will not cause a violation of this Act or of regulations hereunder."

■■ Petitioner argues that the Agency's actions and the Board's order constituted a unilateral adjudication of facts concerning the classification of the receiving waters at the Will Scarlet Mine. The argument then follows that the Agency and the Board failed to afford petitioner an opportunity for a trial-type hearing concerning the classification of the receiving waters. Petitioner, however, makes no allegation that its operations discharge into any waters of the State allowed by Rule 302 to meet standards less restrictive than those of Rule 203. Upon dismissal of counts I, II and IV of its complaint, petitioner may file amended or new pleadings. Petitioner has thus not been denied an opportunity for a hearing before final administrative refusal of its permit. The Board's interpretation of its own regulations affords petitioner the right to file amended or new pleadings and the opportunity to be heard on those pleadings. The *Bell* and *Willner* line of cases is inapplicable to the facts at bar.

■■ Petitioner further contends that the actions of the Agency and the Board were contrary to the Act and to the Board's own rules and regulations. We find otherwise.

Section 13 of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1013(a)(iii)) authorizes the Board to adopt regulations requiring "permits for construction, installation, or operation of any equipment, facility * * * capable of causing or contributing to water pollution." Section 39 directs the Agency to issue permits upon proof that the proposed facility and equipment meet the requirements of the Act and the regulations. "In granting permits the Agency may impose such conditions as may be necessary to accomplish the purposes of this Act." (Ill. Rev. Stat. 1975, ch. 111½, par. 1039(a).) Pursuant to the provisions of the Act, the Board adopted regulations (Pollution Control Board Rules: ch. 3: Water

Pollution, Rules 203, 301, 302; ch. 4: Mine Related Pollution, Rule 605) and the Agency established conditions and procedures for the grant of permits to the operators of mines which may cause or contribute to water pollution in the State of Illinois.

■■ A statute (or regulation) promoting the public health or welfare should be construed liberally to allow the Board set up by that statute to interpret its own rules and regulations. (*Bowles v. Seminole Rock & Sand Co.* (1945), 325 U.S. 410, 413, 89 L. Ed. 1700, 1702, 65 S. Ct. 1215, 1217; *May v. Pollution Control Board* (2d Dist. 1976), 35 Ill. App. 3d 930, 933-34, 342 N.E.2d 784.) Moreover, a reviewing court will not set aside an administrative action taken under statutory authority unless that action has been clearly arbitrary, unreasonable or capricious. *Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310, 319 N.E.2d 782.

■■ Petitioner refers to *Robert N. Nilles, Inc. v. Pollution Control Board* (2d Dist. 1974), 17 Ill. App. 3d 890, 308 N.E.2d 640, in contending that the Board acted arbitrarily. We, however, find *Nilles* to be distinguished from the facts at bar. *Nilles* involved a denial of a petition for a variance without a hearing. The court looked to a petitioner's substantial expenses of time and money in reliance upon permits already issued when it estopped the Board from denying a variance. *Nilles* thus found the actions of the Board to be arbitrary in light of the hardships suffered by petitioner in its reliance upon permits already issued. Such detrimental reliance is not apparent in the case at bar. Here we are concerned with an application for a permit, not with a petition for a variance. Moreover, petitioner has failed to show unreasonable and arbitrary hardship that compliance with the Board's order would impose upon petitioner. It may file amended or new pleadings in counts I, II and IV. It may challenge the regulations in a regulatory amendment proceeding. We believe that the actions of the Agency and the Board as to counts I, II and IV of petitioner's pleadings were in accord with the Act and the Board's own rules and regulations.

The third count of petitioner's pleadings seeks review of the Agency's certification of petitioner's National Pollutant Discharge Elimination System (NPDES) permits. The Federal Water Pollution Control Act Amendments of 1972 (33 U.S.C. §1251 *et seq.* (Supp. V 1975) (Amendments)) authorize the Federal Environmental Protection Agency to take a series of steps to eliminate all discharges of pollutants into the nation's waters by 1985. Section 301(a) of the Amendments (33 U.S.C. §1311(a) (Supp. V 1975)) proscribes the discharge of any pollutant unless the discharge complies with certain sections of the Amendments, one of which is section 402 (33 U.S.C. §1342 (Supp. V 1975)). In turn, section 402(a) (33 U.S.C. §1342(a) (Supp. V 1975)) authorizes the Administrator

of the Federal Environmental Protection Agency to issue permits for individual point sources in the context of a program called the National Pollutant Discharge Elimination System (NPDES). Furthermore, the Federal Administrator has authority to review and approve the plan of any State desiring to administer its own permit program.

Illinois, however, has not yet received approval for its NPDES program. At present NPDES permits in Illinois are administered only through the Federal Environmental Protection Agency. "Any applicant for a Federal license or permit to conduct any activity including, but not limited to, the construction or operation of facilities, which may result in any discharge into the navigable waters, shall provide the licensing or permitting agency a certification from the State in which the discharge originates or will originate." (Section 401(a)(1) of the 1972 Amendments, 33 U.S.C. §1341(a)(1) (Supp. V 1975).) Applicants for NPDES permits in Illinois must thus receive certification from the Illinois Environmental Protection Agency in order to submit their request for an NPDES permit.

The Federal Environmental Protection Agency has the authority under section 301 of the 1972 Amendments (33 U.S.C. §1311 (1975)) to issue industry-wide regulations limiting discharges by existing plants. (*E. I. du Pont de Nemours & Co. v. Train* (1977), 430 U.S. 112, 136, 51 L. Ed. 2d 204, 222, 97 S. Ct. 965, 979.) Moreover, the Circuit Court of Appeals of the United States is authorized to review the standards for new sources and has jurisdiction under section 509 of the Amendments (33 U.S.C. §1369 (1975)) to review the regulations concerning existing plants. (*E. I. du Pont de Nemours*, 430 U.S. 112, 136, 51 L. Ed. 2d 204, 222, 97 S. Ct. 965, 979.) In Illinois the Board must adhere to section 27 of the Illinois Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1027) in adopting NPDES regulations. *Peabody Coal Co. v. Pollution Control Board* (5th Dist. 1976), 36 Ill. App. 3d 5, 10, 344 N.E.2d 279.

■■ The case at bar involves an appeal from a denial of an application for a permit, not a regulation appeal. The third count of petitioner's pleading, seeking review of the Agency's certification of petitioner's NPDES permits, was dismissed by the Board for lack of jurisdiction. At present the Federal Environmental Protection Agency is the sole source of NPDES permits in Illinois. Also, no statutory authority exists which would confer NPDES jurisdiction on the Board prior to Federal approval of Illinois' NPDES system. Petitioner could have sought a regulation appeal. In light of *E. I. du Pont de Nemours*, it may have sought Federal review of NPDES activities. We believe, however, that the Board was correct in dismissing count III of petitioner's pleadings for lack of jurisdiction.

In summary, petitioner has not been denied an opportunity for a hearing prior to final administrative refusal of its permit. In addition, the

Board in the present set of circumstances dealing with public health and welfare should be allowed to interpret its own rules and regulations. The action of the Board as to all four counts of petitioner's pleadings was neither arbitrary nor unreasonable. Petitioner is not deprived of its day in court and may still amend its pleadings and choice of procedure.

Accordingly, the actions of the Board in dismissing petitioner's four-count pleading are affirmed.

Affirmed.

DOWNING, P. J., and STAMOS, J., concur.