THE CITY OF DES PLAINES *et al.*, Petitioners, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents

First District (1st Division)    No. 76-1186

Opinion filed May 15, 1978.

DiLeonardi & O'Brien, Ltd., of Des Plaines (Robert S. Minetz and Robert J. DiLeonardi, of counsel), for petitioners.

Allen S. Lavin, of Chicago (Vincent P. Flood, James B. Murray, and Charles W. Boyd, of counsel), for respondent Metropolitan Sanitary District of Greater Chicago.

William J. Scott, Attorney General, of Chicago (Carol Pearce, Assistant Attorney General, of counsel), for respondent Illinois Environmental Protection Agency.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

The city of Des Plaines, a municipal corporation, Richard F. Ward and Rosemary Argus (petitioners) seek review of orders of the Illinois Pollution Control Board (Board) dismissing their amended complaint as frivolous and denying their motions for stay and vacatur of the dismissal order and for leave to file a second amended complaint. One Board member dissented.

Petitioners' complaint was brought against the Metropolitan Sanitary District of Greater Chicago (MSD), The Illinois Environmental Protection Agency (Agency) and the Board for alleged violations of sections 9(a) and 39(a) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1975, ch. 111½, pars. 1009(a) and 1039(a)) and Board Procedural Rules in connection with the issuance of a water pollution control permit to the MSD for the operation of the proposed O'Hare Water Reclamation Plant (WRP). On review, petitioners assert that their amended complaint was improperly dismissed because it did state a cause of action, leave to file another amended complaint was improperly refused and the Board failed to sufficiently detail its findings and decision.

On July 29, 1966, the MSD enacted an ordinance authorizing the purchase of land in the city of Des Plaines for the construction of a regional waste water treatment facility known as the O'Hare Water Reclamation Plant (WRP). MSD obtained land for the WRP through eminent domain proceedings. On April 9, 1975, EPA issued a water pollution control permit for the construction of the WRP to MSD. The United States Environmental Protection Agency approved the project plans and the expenditure of Federal funds for the project in June 1975. Plaintiffs filed a complaint challenging the validity of the EPA permit with the Board on April 15, 1976, alleging *inter alia* that no air pollution permit was obtained, that the WRP threatened air pollution, the MSD failed to prove that the WRP would not cause a violation of the Act, MSD failed to detail its air contaminant emissions, the permit was issued without notice to the city of Des Plaines and without a public hearing and the permit was

obtained by misrepresentation and a failure to disclose all relevant facts. Petitioners' amended complaint, which contained the same material allegations summarized above, was dismissed as frivolous on motion of the EPA and MSD on July 8, 1976. Subsequently, their motions for a rehearing, for vacatur of the order and for leave to file a second amended complaint were also denied.

This case is one of a series of challenges by the city of Des Plaines to the construction of the WRP within its borders. A brief synopsis of the more than 11 years of litigation follows: In November 1966, the city filed a complaint for declaratory and injunctive relief against MSD alleging that the power of the district to condemn land for the WRP was subject to the city's zoning ordinance. The circuit court enjoined the MSD from acquiring land for the project and its order was affirmed by the appellate court. (*City of Des Plaines v. Metropolitan Sanitary District* (1970), 124 Ill. App. 2d 301, 260 N.E.2d 340.) The supreme court reversed, holding that the MSD's condemnation authority was not subject to the city zoning ordinance. *City of Des Plaines v. Metropolitan Sanitary District* (1971), 48 Ill. 2d 11, 268 N.E.2d 428.

The city then argued that the MSD was subject to its home rule zoning ordinance in another case which the circuit court dismissed as barred by the decision in 48 Ill. 2d 11. The appellate court reversed the circuit court, ruling that the allegation concerning the home rule power of the city sufficiently changed the issues to preclude the application of the doctrine of *res judicata.* (*City of Des Plaines v. Metropolitan Sanitary District* (1973), 16 Ill. App. 3d 23, 28, 305 N.E.2d 639.) In reversing the appellate court, the supreme court held that the second complaint was barred by the doctrine of *res judicata.* (*City of Des Plaines v. Metropolitan Sanitary District* (1974), 59 Ill. 2d 29, 31-32, 319 N.E.2d 9.) In another case, MSD sought declaratory and injunctive relief against the application of the city's home rule health ordinance. The city later, in a separate suit, sought to enjoin MSD from construction unless it complied with the city's home rule health ordinance. In an opinion in the consolidated cases, the supreme court held that the application of the Des Plaines health ordinance to a regional sewage treatment plant was not within the grant of home rule power. *Metropolitan Sanitary District v. City of Des Plaines* (1976), 63 Ill. 2d 256, 262, 347 N.E.2d 716.

Illinois State courts have not been the only forum for the litigation over the WRP. The city challenged the sufficiency of the environmental impact statements issued by the United States Environmental Protection Agency in a civil action in the Federal district court. (*City of Des Plaines v. Metropolitan Sanitary District,* No. 75-C-168 (N.D. Ill. 1975).) Summary judgment motions and a judgment against the city were affirmed by the

court of appeals. *City of Des Plaines v. Metropolitan Sanitary District* (7th Cir. 1977), 552 F. 2d 736.

■■ In the case now before us, petitioners argue that the Board erred in dismissing their amended complaint as frivolous. They contend that the order must be reversed because "frivolous" is a vague term and it is unfair to dismiss the complaint because of its failure to meet a vague criterion. The Act requires the Board to schedule hearings on a complaint filed by someone other than the Agency unless it is duplicitous or frivolous. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b).) The Board has interpreted its own rule against frivolous complaints (Procedural Rule 306) as proscribing complaints which fail to state a cause of action upon which relief may be granted (*Citizens for a Better Environment v. Reynolds Metals Co.* (1973), 8 Ill. P.C.B. Op. 45), even if all of the allegations were proved. (*Farmers Opposed to Extension of the Illinois Tollway v. Illinois State Toll Highway Authority* (1971), 2 Ill. P.C.B. Op. 119.) This court approved the Board's interpretation of "frivolous" in *Winnetkans Interested in Protecting the Environment (WIPE) v. Pollution Control Board* (1977), 55 Ill. App. 3d 475, 370 N.E.2d 1176, where the court concluded "a frivolous pleading is one that is either legally or factually deficient." (*WIPE*, at 481.) We conclude that "frivolous" is a sufficiently definite term to enable complainants to draft adequate pleadings.

■■ In their complaint, petitioners allege that MSD failed to obtain any permit approval from the Division of Air Pollution, contrary to Air Pollution Regulations Rule 103 and that MSD did not provide sufficient information on air pollution. Rule 103 requires that new emission sources cannot be built without a permit from the Agency. (Illinois Pollution Control Board Regulations (P.C.B. Regs.), ch. 2, Rule 103(a)(1).) A new emission source is "any emission source, the construction or modification of which is commenced on or after the effective date of this chapter." (P.C.B. Regs., ch. 2, Rule 101.) Emission sources include "any equipment or facility of a type capable of emitting specified air contaminants to the atmosphere." (P.C.B. Regs., ch. 2, Rule 101.) Specified air contaminants are "any air contaminants as to which this chapter contains emission standards or other specific limitations." (P.C.B. Regs., ch. 2, Rule 101.) However, no regulations for emission standards or other specific limitations applicable to sewage treatment or water reclamation plants such as the WRP have been promulgated. Consequently, the WRP is not an emission source requiring permit from the Division of Air Pollution. The allegation pleads an incorrect conclusion that the WRP is subject to the air pollution control rules. It was clearly insufficient. See *WIPE*, at 482.

■■ Petitioners also allege that the WRP "threatens environment with air

pollution" in violation of section 9(a) of the Environmental Protection Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1009(a)). They contend that the mere existence of a hazard is a sufficient threat to state a cause of action, citing *Springfield Sanitary District v. Environmental Protection Agency* (1971), 1 Ill. P.C.B. Op. 181. In that case, the District petitioned for permission to discharge raw sewage into a creek while repairing an interceptor sewer. Prior to the Board's decision, an old interceptor sewer had ruptured twice, causing the discharge of raw sewage into the creek. Those discharges had caused damage to the environment. The District testified that there was a "very definite danger" of another rupture at any time. (1 Ill. P.C.B. Op. 181.) The Board concluded that "the existence of a sewer likely to rupture and discharge raw sewage to a small stream constitutes a serious water pollution hazard." (1 Ill. P.C.B. Op. 181.) Threat "refers in this context to the existence of a hazard, and is intended to permit the Board to act before the pollution actually takes place." (1 Ill. P.C.B. Op. 181, 182.) In contrast, in the case at bar there is no operating source of emissions such as the sewer in the *Springfield* case. There are no prior instances of pollution and damage to the environment. The MSD does not admit that there will be emissions or discharges which will cause environmental harm as admitted by the Springfield Sanitary District. Petitioners failed to allege facts which would show a "very definite danger" of pollution such as the likelihood of a sewer rupture "at any time" as in the *Springfield* case. The allegation is insufficient to state a cause of action that the WRP is a threat to their environment by the standards set in the *Springfield* case.

■■ Furthermore, this allegation pleads only pure conclusions which, even in administrative proceedings, are insufficient to state a cause of action. (*WIPE*, at 482.) The Act provides that any person may file a complaint meeting the requirements of section 31(a). (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(b).) A complaint "shall specify the provision of this law or the rule or regulation or permit or term or condition thereof under which such person is said to be in violation, and a statement of the manner in, and the extent to which such person is said to violate this law or such rule or regulation or permit or term or condition thereof * * *." (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(a).) Procedural Rule 304(c) states that formal complaints before the Board shall contain:

"1. A reference to the provision of the Act and regulations which the respondents are alleged to be violating;

2. The dates, location, events, nature, extent, duration, and strength of discharges or emissions. and consequences alleged to constitute violations of the Act and regulations. The complaint shall advise respondents of the extent and nature of the alleged violations to reasonably allow preparation of a defense; and

> 3. A concise statement of the relief which the complainant seeks."

The allegation fails to meet the pleading requirements of the Act and Rule 304(c) in that it fails to plead dates, events, nature and extent or duration of the threat to the environment.

■■ Petitioners also allege that MSD failed to prove that its facility would not cause a violation of the Act and that therefore the permit was wrongfully issued in violation of section 39 and Rule 103(a)(5)(A). (Ill. Rev. Stat. 1975, ch. 111½, par. 1039, and P.C.B. Regs., ch. 2, Rule 103(a)(5)(A).) This allegation does not plead any facts in support and thus also fails to conform with the pleading requirements of section 31(a) of the Act (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(a)) and Procedural Rule 304(c) (P.C.B. Regs., ch. 1, Rule 304(c)). It merely states the conclusion that the MSD failed to meet its burden to obtain the permit. Such an allegation is clearly insufficient. See *WIPE*.

■■ Petitioners also allege that EPA violated Board Rule 906(a)(3) by not notifying them of the pending construction permit application, violated Board Rule 909(a)(1) by not holding a public hearing on the WRP, and violated Board Rule 912(b)(2) by misrepresenting and failing to disclose all facts relevant to the permit application. Rules 906, 909 and 912 were not in effect at the time the complaint in question was filed and dismissed. (See P.C.B. Regs., ch. 3, Rule 916; *Peabody Coal Co. v. Pollution Control Board* (1977), 49 Ill. App. 3d 252, 257, 364 N.E.2d 929.) This allegation was insufficient. Even if Rule 912(b)(2) had been in effect at the time of the permit application, violation of that rule was not properly pleaded. Petitioners allege that "the permit was obtained by misrepresentation and failure to disclose all relevant facts" contrary to Rule 912(b)(2). This allegation pleads conclusions of law. It does not set forth with sufficient particularity the nature and extent of the alleged misrepresentations and failure to disclose. (See P.C.B. Regs., ch. 1, Rule 304(c); *Village of Vernon Hills v. Environmental Protection Agency* (1973), 7 Ill. P.C.B. Op. 297.) It was insufficient.

Petitioners further allege that MSD never fairly and honestly detailed its air contaminant emissions, contrary to Rule 103(a)(2) of the Air Pollution Control Regulations. This allegation too merely states a conclusion and fails to allege any facts upon which the Board could grant relief. (Ill. Rev. Stat. 1975, ch. 111½, par. 1031(a); P.C.B. Regs., ch. 1, Rule 304(c).) It was insufficient. See *WIPE*.

On review, decisions of the Board pursuant to its statutory authority will not be set aside unless they are clearly arbitrary, unreasonable or capricious. (*Illinois Coal Operators Association v. Pollution Control Board* (1974), 59 Ill. 2d 305, 310, 319 N.E.2d 782; *WIPE*, at 481.) The record in this case indicates that the Board's dismissal of the amended

complaint was not clearly arbitrary, unreasonable or capricious.

■■ Petitioners' next contention is that the Board improperly refused to grant them leave to file their second amended complaint. The allowance of amendment of pleadings is within the sound discretion of the trial court and the refusal to allow amendment is reversible error only if there is an abuse of discretion. (*Old Salem Chautauqua Association v. Illinois District Council of the Assembly of God* (1958), 13 Ill. 2d 258, 266, 148 N.E.2d 777.) The test in determining whether discretion with respect to allowance of amendment of pleadings was properly exercised is whether it furthers the ends of justice. (*Bowman v. County of Lake* (1963), 29 Ill. 2d 268, 281, 193 N.E.2d 833.) The ultimate efficacy of a claim and previous opportunities to assert a claim may be taken into account. *Bowman; Ennis v. Illinois State Bank* (1969), 111 Ill. App. 2d 71, 76, 248 N.E.2d 534.

Petitioners' second amended complaint differs in only one respect from their first amended complaint. It makes a more specific allegation concerning air pollution by alleging that the WRP threatens their environment with air pollution by causing the emission of aerosols containing bacteria and virus. This allegation, even with the added facts, does not allege sufficient facts to plead a "very definite danger" of pollution "at any time," as did the complaint in *Springfield Sanitary District v. Environmental Protection Agency* (1971), 1 Ill. P.C.B. Op. 181.

■■ After reviewing the second amended complaint, we conclude that the Board did not abuse its discretion in refusing to allow petitioners to amend. The second amended complaint was not sufficiently different from the amended complaint so that petitioners' chances of ultimate success were increased. Furthermore, we believe the Board's refusal furthers the ends of justice, in that it seeks to put an end to protracted litigation. (See *League of Women Voters v. North Shore Sanitary District* (1971), 1 Ill. P.C.B. Op. 369, 393-95.) On oral argument, this court was informed that the construction was about 80% complete and that $80 million dollars had by then been spent on the plant.

Petitioners also contend that the Board failed to set forth its decision with the required particularity. We have examined the transcripts of the proceedings before the Board and find that the reasons for the dismissal of the amended complaint have been adequately specified by the Board members.

The orders of the Board are affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.