WILLIAM R. EDWARDS *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF QUINCY *et al.*, Defendants-Appellees.

Fourth District No. 4—83—0683

Opinion filed May 30, 1984.

David C. Little, of Quincy, for appellants.

James L. Palmer, of Scholz, Staff & Palmer, and Loren E. Schnack, of Loos, Schnack & Siebers, both of Quincy, for appellees.

JUSTICE MILLER delivered the opinion of the court:

The plaintiffs, William and Verlee Edwards, sued the defendants, the city of Quincy and city officials, to recover damages for alleged statutory and constitutional violations. Acting on the defendants' motion to dismiss, the trial court held the doctrines of res judicata and collateral estoppel along with the operation of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1981, ch. 85, par. 1—101 et seq.) barred the plaintiffs' suit. The plaintiffs appeal, and we affirm. Because we decide that res judicata bars the plaintiffs' suit, we need not address the issue of whether the act is also a bar.

On April 4, 1979, the plaintiffs agreed to purchase property in the city of Quincy. The building on the property was operated as a beauty parlor, a valid nonconforming use under the city's zoning ordinance. The plaintiffs conditioned their offer to purchase on their ability to use the property as a cocktail lounge and restaurant, also a nonconforming use. The plaintiffs contacted city officials, and after they concluded they could get a building permit to remodel, they purchased the property.

On June 19, 1979, the plaintiffs applied for their building permit. Instead of their permit, the plaintiffs received a letter advising them that their application had been rejected because their proposed use of

the property violated the zoning ordinance. The plaintiffs appealed to the zoning board of appeals for the city of Quincy. Before the appeal was heard, the city council approved a resolution directing the building inspector to delay issuance of permits involving a shifting of nonconforming uses.

On August 2, 1979, the board held a hearing. Judi Maas, secretary to the city's planning commission, testified the plaintiffs had inquired about the zoning ordinance. She had sent them a letter stating that as long as a building is not enlarged, reconstructed, or structurally altered, it could be used for a different nonconforming use.

Dave Wilson, the city's building inspector, also testified. Wilson had always interpreted the ordinance to exclude only extensions, enlargements, or structural alterations on the outside of the building. He informed the plaintiffs of this interpretation. Wilson accepted the plaintiffs' money for a permit when the plaintiffs applied. He also signed the application stating that it was approved by the building inspector. Later, the corporation counsel, James Rapp, instructed Wilson to scratch out "approved" and put in "accepted."

William Edwards testified that besides checking with the building inspector and the planning commission, he also asked the mayor whether his nonconforming use was permissible. After the mayor stated it was, Edwards bought the property.

The board also heard evidence on the remodeling the plaintiffs wanted to do. The plaintiffs intended to remodel only the interior of the building. Finally, the evidence showed the building had previously been operated as a beauty parlor and as a bakery, both nonconforming uses.

On August 15, 1979, the board issued its opinion and denied the permit. On September 5, 1979, the city council amended its zoning ordinance to eliminate shifting of nonconforming uses which altered the character of a neighborhood. The city council approved the board's decision on September 10, 1979.

On September 19, 1979, the plaintiffs filed an administrative review suit. Count I alleged the board's decision was arbitrary, discriminatory, unconstitutional, contrary to law, and not supported by the evidence. The complaint asserted the board's decision would result in unnecessary and undue hardship to the plaintiffs, and amounted to a taking of property without due process of law. Counts II and III made the same allegations against the city council and the city itself.

The plaintiffs later filed an amendment to their complaint. They alleged they were denied a fair and impartial hearing because only four of the seven members of the board heard their appeal, and the

board failed to conduct an open meeting. The trial court granted a motion to strike the amendment because the issues it raised were not raised before the board.

The trial court remanded the case to the board to make specific findings of fact. The board did so, but the court later rejected these findings. On July 25, 1980, the court reversed the board's decision and ordered the city to issue the permit. The city appealed, and we reversed the trial court in *Edwards v. Zoning Board of Appeals* (1981), 95 Ill. App. 3d 455, 420 N.E.2d 228, holding the plaintiffs were not entitled to their permit under the ordinance.

On November 19, 1982, the plaintiffs filed their present complaint seeking compensatory damages. They first allege city officials assured them they could get a permit and they bought in reliance on these assurances. They also contend the city had an established local governmental standard which entitled them to their permit. They maintain that Rapp illegally instructed Wilson to alter their permit application. The plaintiffs further assert the board denied them due process because only four members heard their appeal, and the board failed to conduct a fair and impartial hearing when deliberating on the case and later on remandment. They contend the city council illegally directed the building inspector to withhold permits. The plaintiffs conclude the defendants' actions deprived them of due process and equal protection and amounted to a taking of property without just compensation. They seek damages for reduction in market value and lost use of their property as well as other expenses relating to the establishment of the proposed business.

The defendants filed a motion to dismiss the complaint with prejudice. On July 15, 1983, the trial court granted the motion. The court held the decision in *Edwards* barred the plaintiffs' present suit. The court also held the Local Governmental and Governmental Employees Tort Immunity Act also barred this suit.

■■ The doctrine of *res judicata* prohibits repetitive litigation to enhance judicial economy and to protect litigants from the burden of retrying an identical cause of action or issue with the same party or a privy. Under the doctrine, a final judgment rendered by a court of competent jurisdiction on the merits bars absolutely a subsequent action involving the same cause of action or issue between the same parties or their privies. *Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 432, 447 N.E.2d 834, 838.

A party invoking *res judicata* must not only plead the former action as a bar, but must also prove the existence and character of the former judgment as well as its legal effect. (*La Salle National*

*Bank v. County of Du Page* (1979), 77 Ill. App. 3d 562, 564, 396 N.E.2d 48, 50.) The plaintiffs contend the defendants failed to properly plead and prove the judgment in *Edwards* as a bar because they never produced the record in *Edwards*. Instead, the defendants asked the court to take judicial notice of *Edwards*.

■ Under Supreme Court Rule 133(b), when pleading a judgment, a party need only state the date of its entry, describe its general nature, and allege generally that it was duly made. (87 Ill. 2d R. 133(b).) This rule applies to judgments pleaded in motions to dismiss based upon *res judicata*. (*Gudgel v. St. Louis Fire & Marine Insurance Co.* (1971), 1 Ill. App. 3d 765, 274 N.E.2d 597.) The defendants properly pleaded the decision in *Edwards*. Once a party pleads the former judgment, Rule 133(b) allows the court to take judicial notice of it. (*Wascher v. Lundeen* (1969), 111 Ill. App. 2d 452, 250 N.E.2d 318.) Therefore, production of the record is not required.

We outlined the scope of *res judicata* in *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 375, 444 N.E.2d 205, 208:

> "The doctrine of *res judicata* is divided into two branches: estoppel by judgment, sometimes referred to as *res judicata*, and estoppel by verdict, also known as *collateral estoppel*. *Hasset Storage Warehouse, Inc. v. Board of Election Commissioners* (1979), 69 Ill. App. 3d 972 [25 Ill. Dec. 909], 387 N.E.2d 785.
>
> Estoppel by judgment (*res judicata*) provides that a valid judgment in a previous action between the parties bars a subsequent action between those parties on the same claim or cause of action. The doctrine applies not only to those issues which were actually raised in the first proceeding, but also to any issues which might have been raised in that proceeding."

Under the estoppel by judgment branch, therefore, a final judgment bars a second suit where the parties and the cause of action are identical. *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 376, 444 N.E.2d 205, 208.

■ The plaintiffs assert the parties named in this suit are not identical to the parties in *Edwards*. While the plaintiffs are the same, the defendants named in *Edwards* were the city, the city council, and the zoning board of appeals. The plaintiffs first contend the individual members of the city council and the board are not identical to the council or the board themselves. The effect of *res judicata*, however, is the same whether the suit is brought against an administrative body or its individual members. *Consolidated Distilled Products, Inc. v. Allphin* (1978), 73 Ill. 2d 19, 382 N.E.2d 217.

The plaintiffs next point out that the building inspector, the corpo-

ration counsel, and his assistant are parties here, while they were not in *Edwards*. These individuals are agents and employees of the city, and the city, which can only function through the actions of its agents and employees, can be held liable only under a *respondeat superior* theory. *Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 604, 394 N.E.2d 1291, 1295.

*Res judicata* has special applicability in suits against masters or servants. As the supreme court stated in *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 124, 382 N.E.2d 1217, 1221-22:

"In this regard, it has been said that the liability of the master and servant for the acts of the servant is deemed that of one tortfeasor and is a unified or consolidated one. (*Aldridge v. Fox* (1952), 348 Ill. App. 96.) As such, any legal claim against the master must be said to be identical to that which the plaintiff may have asserted against the servant. The operative facts which comprise the alleged bases for liability of the master are identical to those which would prove the servant liable. Indeed, if the agency relationship is not in dispute, any act of the servant which renders the master liable also renders the servant liable. A judgment, therefore, adjudicating the master not liable, where a judgment to the contrary could have only resulted from a finding that the servant committed an actionable wrong against the plaintiff, is a judgment in legal effect that the servant is not liable."

Because the claims against the agents and employees of the city are predicated on the same acts which form the basis of the city's liability, those claims are barred if the prior judgment in *Edwards* bars the present suit against the city. *Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 100, 454 N.E.2d 684, 689-90.

■ The issue, therefore, is whether the cause of action in this suit is identical to the one in *Edwards*. The plaintiffs rely mainly on the difference in relief sought to establish a difference in the causes of action. In *Edwards*, they sought issuance of a building permit, while currently they seek money damages. Generally, where one suit seeks the performance of an act, and another a money judgment, the causes of action are not the same. *Renner v. Greathouse* (1957), 12 Ill. App. 2d 338, 341, 139 N.E.2d 825, 827.

Besides *Renner,* the plaintiffs cite other cases in which a court held the difference in relief sought amounted to a difference in the cause of action. (*LaGrange Federal Savings & Loan Association v. Rock River Corp.* (1981), 97 Ill. App. 3d 712, 423 N.E.2d 496; *In re*

*Estate of Heyder* (1964), 48 Ill. App. 2d 119, 198 N.E.2d 350.) The rulings in these cases are based upon the rationale set forth in *Pillsbury v. Early* (1927), 324 Ill. 562, 155 N.E. 475. *Pillsbury* involved a suit for specific performance of a contract, which the plaintiff lost, and a subsequent suit for money damages. The court stated that in order to receive specific performance, a plaintiff had to prove an express contract existed by clear and convincing proof. To recover damages, however, a plaintiff need not prove an express contract existed, for he could recover on an implied contract as well. The judgment in the first suit, therefore, would not bar the second suit. (324 Ill. 562, 565, 155 N.E. 475, 477.) The important distinction between the causes of action was not the difference in relief sought, but rather, the evidence necessary to sustain a verdict in the second suit would not have sustained one in the first. In each of the cases the plaintiffs cite, this same difference in the evidence necessary for a verdict in the second suit was present.

A party cannot evade the effect of *res judicata* merely by changing the form of his complaint. (*City of Des Plaines v. Metropolitan Sanitary District* (1973), 16 Ill. App. 3d 23, 305 N.E.2d 639, *rev'd* (1974), 59 Ill. 2d 29, 319 N.E.2d 9.) A cause of action consists of a right belonging to the plaintiff which the defendant violates by some wrongful act or omission. (*City of Elmhurst v. Kegerreis* (1945), 392 Ill. 195, 205, 64 N.E.2d 450, 454.) Even if one group of facts gives rise to different claims for relief, there remains a single cause of action. (*Morris v. Union Oil Co.* (1981), 96 Ill. App. 3d 148, 157, 421 N.E.2d 278, 285.) The test is whether the causes of action are based upon a common core of operative facts or whether the evidence necessary to sustain the second verdict would have sustained the first. *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 376, 444 N.E.2d 205, 208.

■ Both the present suit and *Edwards* arose out of a common core of operative facts. The present complaint, like the *Edwards* suit, is based upon the city's action in denying the plaintiffs' building permit. The identical statutory and constitutional violations they now allege were asserted in either their complaint or their amended complaint in *Edwards*. The only real difference is the relief requested. In *Edwards*, the plaintiffs sought reversal of the board's decision to deny their permit. If any of the constitutional or statutory violations that the plaintiffs now allege did occur, then they would have been entitled to a verdict in their favor in *Edwards*.

The plaintiffs now assert an estoppel theory, which was not alleged in their complaint in *Edwards*. They contend the city had an es-

tablished standard for application of the ordinance, and they relied on the assurances of city officials when buying their property. While the plaintiffs did not make this claim in *Edwards*, the evidence they now allege in support of their claim was presented in the hearing before the board. If the plaintiffs could have recovered their permit in *Edwards* under this theory, their present claim is barred.

Generally, a city cannot be estopped by an act of its agent beyond the authority conferred upon him. This general rule, however, is qualified to enable a party to invoke estoppel when municipal officers induced his action and to prevent the municipality from stultifying itself by retracting what its agents have done, where the party would suffer substantial loss in the absence of such relief. *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 161, 171 N.E.2d 605, 607-08.

In *Cities Service*, the plaintiff inquired and city officials gave him a copy of a zoning ordinance no longer in effect. The plaintiff got a building permit and spent substantial sums to purchase and improve property. Later, the permit was revoked because it violated the valid ordinance. The supreme court held the city was estopped to deny the permit because the city officials had induced the plaintiff's actions.

■ The plaintiffs in this case did not have to show they were actually issued a permit to invoke estoppel. In *COS Corp. v. City of Evanston* (1963), 27 Ill. 2d 570, 576-77, 190 N.E.2d 364, 367-68, the court held the plaintiffs' substantial change in position by expenditures in reliance on the probability of issuance of a permit, based upon the existing ordinance together with the assurances of the city officials, entitled the plaintiffs to the issuance of the permit. The plaintiffs, therefore, could have received their permit based on the same evidence that they now claim entitles them to damages.

■ The plaintiffs complain the action in *Edwards* was only for administrative review. They incorrectly maintain they could not raise their constitutional and statutory claims in that setting. The purpose of administrative review is to make certain the agency has acted within its judicial bounds defined by law, to guard those statutory and constitutional rights guaranteed to one subject to administrative action, and to ascertain whether the record supports the order issued. (*Piotrowski v. State Police Merit Board* (1980), 85 Ill. App. 3d 369, 374, 406 N.E.2d 863, 866.) The reviewing court should also determine whether the person received a fair and impartial hearing before the administrative body. *Golden Egg Club, Inc. v. Illinois Liquor Control Com.* (1970), 124 Ill. App. 2d 241, 260 N.E.2d 329.

■ The plaintiffs point out that the *res judicata* effect usually af-

fixes to the administrative decision rather than the reviewing court's decision. (*Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 50, 430 N.E.2d 620, 623.) They conclude their constitutional claims are not barred because the board could not consider them. If there is any discrepancy between the court's and the administrative decision, however, the *res judicata* effect affixes to the reviewing court's decision. (*La Salle National Bank v. City of Chicago* (1977), 54 Ill. App. 3d 944, 369 N.E.2d 1363.) The reviewing court's judgment, therefore, is *res judicata* to all issues raised before it, and all issues which could have been raised on the record but were not are deemed waived. *People v. Mitchell* (1981), 95 Ill. App. 3d 779, 791, 420 N.E.2d 415, 424.

■ Finally, the plaintiffs contend this case involves different proof than *Edwards*. The only proof necessary in *Edwards* was evidence of the proposed use of the property and the interpretation of the ordinance because the only issue decided was whether the plaintiffs were entitled to their permit under the ordinance. The plaintiffs assert the proof in this suit will consist of evidence of conspiracy, violations of statutory rights, and oral and written communications.

The plaintiffs misconstrue the scope of *res judicata*. It applies not only to issues actually raised, but also to any issues which might have been raised. The record in *Edwards* contains the same evidence upon which the plaintiffs base their present complaint. The issues in *Edwards* were limited due to the theory under which the plaintiffs sued, but the issues the plaintiffs now raise could have been raised in that suit.

■ The second branch of *res judicata*, estoppel by verdict or collateral estoppel, also bars the present suit. An adjudication of a controlling fact or issue between the parties precludes relitigation of that fact or issue. The issue must actually or necessarily have been decided by a court of competent jurisdiction in an earlier proceeding, and if any uncertainty exists, the doctrine will not be applied. *Redfern v. Sullivan* (1982), 111 Ill. App. 3d 372, 376-77, 444 N.E.2d 205, 208-09.) Only the party against whom the estoppel is asserted must have been a party, or a privy of a party, in the prior proceeding. *Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 398 N.E.2d 9.

■ The plaintiffs contend the only issue decided in *Edwards* was whether they were entitled to their permit. We held they were not. While they concede they cannot now recover that permit, they claim damages which stem from the denial of the permit. If they cannot now prove they were entitled to the permit, however, they cannot

recover these damages. The plaintiffs had an opportunity to prove the defendants wrongfully denied their permit, and they cannot relitigate the issue merely because they are unhappy with the previous result.

The order of the trial court granting the defendants' motion to dismiss with prejudice is affirmed.

Affirmed.

MILLS, P.J., and GREEN, J., concur.