Shirley COOPER and William
Cooper, Plaintiffs,

v.

Sue SUTER, Robert Blackwell, D. Jean
Ortega–Piron, Jeanine Detwiler and
Robert Harris, Defendants.

No. 92–3109.

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 27, 1993.

Charles S. Watson, Howard W. Feldman,
Carl R. Draper, Springfield, IL, for plaintiffs.

Carol J. Barlow, Asst. Atty. Gen., Springfield, IL, for defendants.

*OPINION*

RICHARD MILLS, District Judge:

An issue of *res judicata*.

If state law would require that the case be barred and the parties have had a full and fair opportunity to litigate the case, a federal court must also bar the case.

## I. Background

Shirley and William Cooper owned and operated the Little Moppet Day Care Center (the Center) located in Springfield, Illinois. The Coopers applied to the Department of Children and Family Services (DCFS) for a license to operate the day care center in July 1987. During the pendency of the Coopers' application, they ran the Center under a permit issued by DCFS. On January 27, 1988, DCFS received an anonymous call claiming that children were being left unattended at the Center. This call initiated a series of DCFS investigations of the Center.

From January 1988 to June 1988 three visits were made to the Center by DCFS licensing representatives. These visits revealed several relatively minor licensing violations which the Coopers quickly rectified. In September 1988 DCFS issued a license to the Coopers authorizing them to run the Little Moppet Day Care Center.

Between December 5, 1988 and March 20, 1990, DCFS licensing representatives visited the Center eleven (11) times.[1] On four of these visits the Center was found to be in compliance with licensing rules. On the remaining seven visits, however, the Center was found to be in violation of several licensing rules. The most significant violations observed were improper staff to child ratios, unattended children, and improper grouping of children of different ages.

Individually, these violations were not significant enough to warrant revoking the Coopers' day care license. The repeated occurrences of these violations over a sixteen month period, however, resulted in a DCFS decision to revoke the Coopers' license. On

May 21, 1990 DCFS mailed the Coopers a notice of intent to revoke their license. The Coopers timely mailed to DCFS their request for an administrative hearing and for a copy of the charges against them. On June 13, 1990, Defendant D. Jean Ortega–Piron wrote Plaintiffs that her staff would schedule the hearing requested by the Coopers concerning their license.

DCFS continued to closely monitor the Center. Between June 1, 1990, and December 7, 1990, licensing representatives of DCFS investigated the Center thirteen (13) times. These visits continued to result in findings of licensing violations. The most critical violations continued to be improper child to staff ratios, unattended children and improper grouping of children.

Prior to October 30, 1990 the Coopers had a contract with DCFS to provide day care services for children DCFS had taken into custody. On October 31, 1990 the Business Administrator of the DCFS Springfield Regional Office, Defendant Frank Melchiorri, terminated the Plaintiffs' contract. Plaintiffs allege that the termination of the contract resulted in the loss of fourteen children.

Notice of Hearing and a Statement of Charges were sent to Plaintiffs on November 15, 1990. The date for the administrative hearing was set for January 8, 1991. On November 30, 1990, Defendant Robert Blackwell sent a letter to the parents of the children enrolled at the Center. This letter stated that serious licensing violations existed at the Center, which jeopardized the health and safety of the children. The letter encouraged the parents of children at the Center to seek other day care arrangements and offered help in finding such arrangements.

The hearing concerning the Plaintiffs' license began on January 8, 1991 and was completed January 24, 1991 on receipt of the transcript. On April 18, 1991 the Hearing Officer for DCFS issued his *Recommendation and Opinion of the Hearing Officer,* wherein he recommended that the Coopers'

---

1. This number comes from the *Recommendation and Opinion of the Hearing Officer,* Summary of the Department's Evidence, written by the Hearing Officer who presided over the administrative hearing to revoke the Coopers' day-care license.

license to operate the Center be revoked. On May 1, 1991 Defendant Suter, the Director of DCFS, issued a final decision of the Department, adopting *in toto,* the Hearing Officer's findings of fact and conclusions of law. Accordingly, Suter revoked the Coopers' day care license.

The decision of the Director was timely appealed to the Sangamon County Circuit Court pursuant to the Illinois Administrative Review Law. After briefs were filed and arguments had, the decision of the Director was reversed on December 13, 1991 in an Order of Review entered by the Circuit Court of the Seventh Judicial Circuit for Sangamon County. The Circuit Court's order was timely appealed to the Illinois Appellate Court, Fourth District. The Fourth District reversed the order of the Circuit Court, and reinstated DCFS's revocation of the Coopers' license. The Coopers then filed this suit pursuant to 42 U.S.C. § 1983. Plaintiffs allege that each of the named Defendants unconstitutionally deprived Plaintiffs of property interests and liberty interests without due process of law.

## II. Legal Standard

■ Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material facts exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the oppos-

ing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987). "A scintilla of evidence in support of the non-movant's position is insufficient to successfully oppose summary judgment; 'there must be evidence on which the jury could reasonably find for the [nonmoving party].'" *Brownell v. Figel,* 950 F.2d 1285 (7th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)).

## III. Analysis

Defendants filed their motion for summary judgment claiming that the Plaintiffs' claims are barred by *res judicata.* Defendants argue that these parties have litigated this cause of action in a previous suit and have received a final decision from a court of competent jurisdiction.

The Plaintiffs agree, in part. Plaintiffs admit that the charges against Defendants Suter, Ortega–Piron, Detwiler and Harris are barred by *res judicata.* Plaintiffs argue, however, that the claim against Defendant Blackwell is not barred. The claim against Blackwell is that he unlawfully retaliated against Plaintiffs for their decision to demand an administrative hearing. The alleged retaliation came in the form of the letter Blackwell sent to the parents of the children attending the Center.

Plaintiffs claim that the count against Defendant Blackwell is not part of the same cause of action as the counts against the remaining Defendants. The counts against the other Defendants, according to Plaintiffs, rely on facts that Plaintiffs' administrative hearing was not in accordance with DCFS regulations and, therefore, violated Plaintiffs' due process rights. The count against Blackwell, Plaintiffs argue, can stand regardless of whether or not Plaintiffs received due process at their hearing.

Plaintiffs further argue that they did not have an opportunity to fully and fairly litigate the issue of retaliation. According to Plaintiffs, the issue of retaliation was not pertinent to the issue of whether their license

had been properly revoked. Introducing this extraneous issue, therefore, would not have been proper and, probably, not allowed.

"Federal courts are required to give state court judgments the same preclusive effect that those judgments would be given in the courts of the state from which they emerged if: (1) under the law of the forum state the claim would be barred by the doctrine of res judicata; and (2) the party against whom the earlier decision is asserted as a bar had a full and fair opportunity to litigate the claim or issue." *Lolling v. Patterson,* 966 F.2d 230, 235 (7th Cir.1992). "Under Illinois law, to constitute res judicata a decision must involve '(1) identity of parties or their privies in the two suits; (2) identity of causes of action in the prior and current suit; and (3) a final judgment on the merits in the prior suit.'" *Id.* "Illinois courts have consistently held that the bar of *res judicata* extends not only to questions actually decided, but also to all grounds of recovery and defenses which might have been presented in the prior litigation between the parties." *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1234 (7th Cir.1986).

## A. Res Judicata

### 1. Identity of Parties

■ Although in the first suit DCFS was the only named defendant and in this case individual officers of DCFS are the Defendants, the parties are the same. "The effect of *res judicata,* ..., is the same whether the suit is brought against an administrative body or its individual members." *Edwards v. City of Quincy,* 124 Ill.App.3d 1004, 1009, 464 N.E.2d 1125, 1129, 80 Ill.Dec. 142, 146 (4th Dist.1984) (citing *Consolidated Distilled Products, Inc. v. Allphin,* 73 Ill.2d 19, 382 N.E.2d 217, 21 Ill.Dec. 853 (1978)).

### 2. Identity of Causes of Action

■ Illinois has two different tests to determine if a prior suit should be given *res judicata* effect. *Pirela v. Village of North Aurora,* 935 F.2d 909 (7th Cir.1991). The first test is labeled the same evidence test. Under this test the court must determine whether the same evidence would sustain both actions. *Id.* at 912 (citing *Hagee v. City of Evanston,* 729 F.2d 510, 513 (7th Cir. 1984)). The second test is labeled the transactional test. Under this test the court must determine if the two suits arise out of the same group of operative facts. *Hagee,* 729 F.2d at 513.

■ Under either of these tests, Plaintiffs' claim against Defendant Blackwell constitutes the same cause of action. Plaintiffs claim that Defendant Blackwell unconstitutionally retaliated against Plaintiffs when they chose to exercise their due process right to an administrative hearing. This retaliation, argues Plaintiffs, "did by *fiat* what could only be properly done by the licensing authorities—he effectively closed the Coopers' day care center down by using the weight and authority of the government to state that the children were in danger and the Plaintiffs were in violation of the licensing standards...."[2]

This argument could have been made by Plaintiffs during their administrative hearing and then pursued to the Circuit and Appellate Courts. Plaintiffs, however, did not pursue this claim, although they could have. "The purpose of administrative review is to make certain the agency has acted within its judicial bounds defined by law, to guard those statutory and *constitutional* rights guaranteed to one subject to administrative action, and to ascertain whether the record supports the order issued." *Edwards,* 124 Ill.App.3d at 1012, 464 N.E.2d at 1131, 80 Ill.Dec. at 148 (citing *Piotrowski v. State Police Merit Board,* 85 Ill.App.3d 369, 374, 406 N.E.2d 863, 867, 40 Ill.Dec. 660, 664 (1980) (emphasis added)). It is clear that Plaintiffs would have to use the same proof to establish their federal § 1983 claim against Blackwell as they could have presented at the administrative hearing to show that

---

**2.** Plaintiffs' Response to Motion for Summary Judgment p. 3. This argument is tenuous at best. During the administrative hearing, Mrs. Cooper stated, under oath "[a]nd I never lost one person because of it (the letter), I want you to know that." Transcript of Administrative Hearing p. 213.

DCFS, through Blackwell, violated Plaintiffs' constitutional rights.

Application of the transactional test leads to the same result. It is unquestionable that both suits arose out of the same group of operative facts; DCFS's investigation of the Center and their subsequent decision to revoke Plaintiffs' day care license.

### 3. Final Judgment on the Merits

 The Fourth District's opinion in *Cooper v. Dep't of Children & Family Services*, 234 Ill.App.3d 474, 599 N.E.2d 537, 174 Ill. Dec. 753 (1992), provided a final judgment on the merits.

### B. Full and Fair Opportunity to Litigate

Plaintiffs had the opportunity to raise their retaliation claim during the administrative hearing and through judicial review of the hearing officer's determination. Blackwell's letter was entered into evidence at the administrative hearing and some testimony was offered in regards to it. Plaintiffs did not, however, choose to argue that the letter unconstitutionally retaliated against them. Plaintiffs also failed to raise this claim in the Circuit Court.

A case on point is *Button v. Harden*, 814 F.2d 382 (7th Cir.1987). In that case, Button, a tenured teacher, was fired by the school board. An administrative hearing followed, in which the hearing officer found that the firing should be upheld. Button appealed to an Illinois circuit court, which affirmed his dismissal. Button then brought a § 1983 action in federal court alleging that his firing had been in retaliation for his exercise of his First Amendment right of free speech. The district court dismissed the case on grounds of *res judicata* and Button appealed.

On appeal, Button claimed that neither the hearing officer nor the circuit court ever determined whether he was a victim of unconstitutional retaliation. According to the Seventh Circuit, Button had two choices after receiving the hearing officer's decision. First, Button could have immediately filed his § 1983 claim. Second, Button could file suit in circuit court for judicial review of the hearing officer's findings. If Button chose this route, he had to allege every ground for relief he had against the hearing officer's decision.

Button chose the second path but did not raise the retaliation argument in circuit court. The Seventh Circuit, relying on *Edwards*, held that Button could have brought his First Amendment claim in the circuit court proceedings; therefore, Button's § 1983 action was barred by *res judicata*.

Like Button, Plaintiffs could have brought their retaliation claim in circuit court, thereby having an opportunity to have the issue fully and fairly litigated. Plaintiffs, however, failed to raise their claim in circuit court.

*Ergo,* Defendants' motion for summary judgment (d/e 12) is ALLOWED.

SO ORDERED.