Ronald ERNST, Plaintiff,

v.

CITY OF CHICAGO, et al., Defendants.

No. 99 C 1820.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 7, 1999.

Ronald Ernst, Chicago, IL, plaintiff pro se.

Karen Dorff and Diane M. Pezanoski, Assistant Corporation, Chicago, IL, for City of Chicago.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Ronald Ernst ("Ernst") sues the City of Chicago and "various John Does and Jane Does who work for the City of Chicago and were involved in this case" (collectively "City"), asserting a number of claimed constitutional violations resulting from the towing of four motor vehicles belonging to Ernst. City has responded with a motion to dismiss all counts of the Complaint under Fed.R.Civ.P. ("Rule") 12(b)(6). For the reasons set out in this memorandum opinion and order, City's motion is granted.

1. Because for Rule 12(b)(6) purposes this opinion must credit Ernst's allegations as true, what follows in this *Facts* section is drawn from his Complaint—hence the factual recital omits "Ernst alleges" or any comparable locution.

2. Although this opinion regularly refers to "administrative review" in the generic sense, the review proceeding was technically pursuant to the common law writ of certiorari—but that makes no substantive difference because under that rubric just as under the Illinois

### Facts[1]

On March 21, 1997, without prior notice to Ernst, City employees towed four of his motor vehicles (a 1970 Ford Maverick, a 1977 Mercury Monarch, a 1977 Chevy van and a 1977 Pontiac Grand Prix) from an open gravel parking lot on private property behind his home. Several days later Ernst received post-tow notices (sent by regular mail) as to two of the four automobiles. Those notices explained his options: (1) to pay towing and storage fees and reclaim the vehicles, (2) to request a hearing to determine the validity of the tow or (3) to pay no fees and sign over the vehicles to City.

Ernst called to request a post-tow hearing, which was held on April 8, 1997 before hearing officer Dolores Barrett ("Barrett"). That hearing was conducted in the entryway of a City building near the receptionist's desk. Barrett made no record of the hearing and refused to let Ernst see any documents concerning the tows. Barrett ultimately found that the tows of Ernst's vehicles were valid because they were "hazardous dilapidated motor vehicle[s]" as defined by Chicago ordinance.

Ernst appealed that finding to the Cook County Circuit Court (*Ernst v. City of Chicago Bureau of Parking Enforcement*, No. 97 M1 1046), paying $205.29 in filing fees for that administrative review.[2] Ernst prevailed in his lawsuit: In November 1997 the judge reversed the hearing officer's determination that the tow was valid and ordered City to return Ernst's automobiles to him. But after City moved for reconsideration on the ground that the

Administrative Review Act the scope of review is all-inclusive, "including *de novo* review of any constitutional issues" (*Holstein v. City of Chicago*, 29 F.3d 1145, 1148 (7th Cir.1994) and Illinois cases cited there). It is thus irrelevant that the Circuit Court proceeding may have been characterized by City or even by the judge there as brought under the Illinois Administrative Review Law rather than the common law writ: Either way the later-discussed principles of claim preclusion apply.

judge did not have the authority to grant injunctive relief, the judge vacated the portion of the earlier order that had ordered City to return the vehicles. Thus according to the Circuit Court's final judgment (which was not appealed), Ernst was free to retrieve his cars without paying any charges because the tow was invalid, but City did not have to deliver the cars to him.

While Ernst's administrative review action was pending, City wrongfully sold his cars for scrap. City's Claims Unit then offered to compensate Ernst for the loss of the vehicles, but Ernst allowed the offer to lapse when City did not address Ernst's concerns about the asserted constitutional defects in its procedures.

### Rule 12(b)(6) Standards

As indicated in n. 1, on the current motion to dismiss this Court accepts all well-pleaded factual allegations of the Complaint as true, drawing all reasonable inferences in Ernst's favor (*Sherwin Manor Nursing Ctr., Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994)). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (*Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### Claim Preclusion

City first argues that many of Ernst's claims—all except those relating to the sale and destruction of his vehicles—are barred under the doctrine of claim preclusion. Although Ernst also contends here that the towing of his four vehicles and City's notice and hearing procedures violated various municipal, state and federal laws and constitutional provisions, all of those challenges either were raised or could have been raised in Ernst's earlier state court proceeding. Hence under Illinois preclusion law this Court cannot hear them.

*River Park, Inc. v. City of Highland Park*, 184 Ill.2d 290, 302, 234 Ill.Dec. 783, 703 N.E.2d 883, 889 (1998) has set out the well-established Illinois doctrine of claim preclusion [3]:

> Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. *Rein v. David A. Noyes & Co.*, 172 Ill.2d 325, 334–35, 216 Ill.Dec. 642, 665 N.E.2d 1199 (1996); *Rodgers v. St. Mary's Hospital*, 149 Ill.2d 302, 311–12, 173 Ill.Dec. 642, 597 N.E.2d 616 (1992). The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that suit. *LaSalle National Bank v. County Board of School Trustees*, 61 Ill.2d 524, 529, 337 N.E.2d 19 (1975). For the doctrine of *res judicata* to apply, the following three requirements must be satisfied: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies. *Downing v. Chicago Transit Authority*, 162 Ill.2d 70, 73–74, 204 Ill.Dec. 755, 642 N.E.2d 456 (1994).

Illinois law controls this Court's analysis, of course, because it is an Illinois state court judgment whose preclusive effect is at issue (*Rogers v. Desiderio*, 58 F.3d 299, 301 (7th Cir.1995)).

■ City easily meets all three requirements of Illinois law. First, the Circuit Court did render a final judgment in

---

**3.** Although the text quotation (like most Illinois cases) uses the term "res judicata," this Court (adhering to the teaching in *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) and many later cases) has consistently referred to "claim preclusion" to distinguish the concept from "issue preclusion." That usage avoids any potential for the frequently-encountered confusion engendered by the older practice of applying the term "res judicata" to both branches of preclusion analysis.

Ernst's favor reversing the hearing officer's decision.[4]  Next "there is an identity of cause of action" under Illinois' transactional test: Ernst's prior state court action and his several claims raised in this federal action "arise from a single group of operative facts, regardless of whether they assert different theories of relief" (*River Park*, 184 Ill.2d at 311, 234 Ill.Dec. 783, 703 N.E.2d at 893)—those operative facts comprise the tows and the ensuing administrative proceedings against Ernst.  Finally, both Ernst and City were parties to the earlier state court action.

Furthermore, Ernst *could* have raised his statutory and constitutional challenges in the state court administrative review proceedings (see, e.g., *Rogers*, 58 F.3d at 301, citing *Stratton v. Wenona Community Unit Dist. No. 1*, 133 Ill.2d 413, 429–30, 141 Ill.Dec. 453, 551 N.E.2d 640, 646–47 (1990); accord, *Edwards v. City of Quincy*, 124 Ill.App.3d 1004, 1012–13, 80 Ill.Dec. 142, 464 N.E.2d 1125, 1131–32 (1984)).  As *Rogers*, 58 F.3d at 301 has made clear:

> We know from *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) that principles of preclusion are fully applicable when the first suit is an administrative-review action in state court.

Ernst did challenge the validity of the tows (indeed, he did so successfully), and he could also have challenged the administrative hearing process on any grounds he chose.

It is true that Ernst has handled all of his administrative and judicial proceedings pro se, and it may well be that he was unaware of his ability to assert those other challenges in the state proceedings.  Thus his Mem. 15–16 complains that the Circuit Court judge's order spoke of "sitting solely as a court of review" and that Ernst didn't need to raise constitutional issues because he had a winner on administrative review grounds.  But that does not temper the square applicability of Illinois preclusion law to him, just as it would apply to a lawyer-represented party.

In sum, Ernst's claims challenging the towing of his vehicles and the administrative hearing process are precluded and cannot be made the subject of a second suit in this Court.[5]  Those claims are dismissed.

*Disposition of Ernst's Vehicles*

It is far less certain that Ernst could have challenged the sale and destruction of his vehicles in state court, for the cars were not sold until those proceedings had already begun.[6]  Even though Ernst's Complaint is not clear as to just what statutory or constitutional provisions he is now invoking to dispute the ultimate disposition of his vehicles, for it alleges only that they were "unlawfully" sold (Complaint ¶¶ 5, 10, 17), this Court will read his pro se Complaint as generously as possible (see, e.g., *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam)).  So the ensuing discussion will address both (1) a possible procedural due process claim as to City's sale of his vehicles for scrap and (2) a possible supplemental jurisdiction claim under 28

---

4.  Ernst Mem. 5–6 disputes the significance of the references in City's memorandum to the absence of an appeal from the Circuit Court's decision—Ernst stresses that as the prevailing party he had neither standing nor an incentive to appeal.  That however is quite beside the mark—the critical fact is that a final judgment *was* entered in a proceeding in which he could have (see n. 2) but did not raise the selfsame issues that he forwent there and now seeks to advance here.

5.  This ruling obviates any need to prolong the discussion by addressing City's added arguments that would independently defeat Ernst's action: Ernst's asserted lack of standing (City R.Mem. 9–11) and the untenability of his constitutional claims on the merits (*id.* 11–14).  Suffice it to say that this opinion's consequent omission of any point-by-point analysis of those contentions should not be mistaken as an adverse reflection on their probative force.

6.  Further, it is unclear from the Complaint when Ernst discovered that his cars had been sold.

U.S.C. § 1367(a) ("Section 1367(a)") that the sale violated municipal and state law.

*Procedural Due Process*

■ Under the Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), there is no denial of due process if a plaintiff is seeking a postdeprivation remedy for loss of property resulting from a random and unauthorized act of a government official, and if the state already provides an adequate postdeprivation remedy.[7] That principle dooms Ernst's possibility of a 42 U.S.C. § 1983 claim.

■ Clearly Ernst alleges that a City employee's random and unauthorized act led to the loss of his vehicles. Three times in his Complaint he refers to the City's having "unlawfully" sold his cars (Complaint ¶¶ 5, 10, 17). And the municipal ordinance governing the disposal of towed cars does not authorize City officials to sell them while administrative review proceedings are pending (Mun.Code § 9–80–110(b), reproduced at City Ex. A). Although Ernst's response to City's motion to dismiss states that "the circumstances involving [his] four vehicles certainly do[ ] suggest that indeed the city may have just such a policy" (Ernst Mem. 37), that statement in a brief does not cure his Complaint's failure to have alleged anything other than a random and unauthorized act causing his loss of property. Indeed, it is conventional wisdom that a party's memorandum may not be used as a vehicle to overcome a pleading deficiency (*Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir.1996), citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.

1984)), and nothing in Ernst's current vague suggestion of the possibility of a policy justifies keeping his lawsuit alive in such speculative terms.

■ Because Ernst has alleged a property deprivation resulting from a random and unauthorized action, he cannot have stated a claim for a procedural due process violation under *Parratt* (as curbed by *Daniels* ) or under *Hudson*, or under the many later cases following their lead, if he had an adequate postdeprivation state remedy. And so he did—indeed, via more than one route.

First, City offered to pay Ernst for the loss of the vehicles. Although it offered him a set reimbursement amount, Ernst does not argue that City offered too little, nor did he attempt to negotiate that amount with City. Second, Illinois caselaw provides for a bailment action in which Ernst could have sued City for damages for its failure to keep his vehicles safely (see, e.g., *American Ambassador Cas. Co. v. City of Chicago*, 205 Ill.App.3d 879, 883, 150 Ill.Dec. 755, 563 N.E.2d 882, 885 (1990), permitting a bailment action when "the police department lawfully acquired possession of the vehicle and held it under circumstances whereby it was obligated, under the principles of justice, to keep it safely and restore it or deliver it to the owner").

Because Ernst thus had adequate post-deprivation state law remedies, he has not stated a claim for a denial of due process. And that result does not change if Ernst intends to sue City employees in their personal, rather than their official, capacities (*Wilson v. Civil Town of Clayton*, 839 F.2d 375, 384 (7th Cir.1988)). So City's

---

7. *Parratt* was overruled by *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), but only as to *Parratt* 's holding that a deprivation resulting from negligent conduct could support a due process claim. *Daniels* held instead that only an intentional deprivation would suffice (that decision left *Hudson* unimpaired—see *Daniels, id.* at 331, 106 S.Ct. 662). If then the

sale of Ernst's cars for scrap were merely negligent (as would seem more probable), he would lose at the very threshold of Section 1983 analysis in light of *Daniels*. But to demonstrate that Ernst fails under any hypothesis, the discussion that follows in the text indulges the assumption most favorable to Ernst: that the sale and destruction of the vehicles was an intentional deprivation.

motion to dismiss Ernst's claim that he was deprived of his property in violation of due process is granted.

*State Law Violations*

Ernst also appears to raise a claim, although not explicitly, that City's sale and destruction of his vehicles violated city and state law. Of course any such claim could be raised in this action only under this Court's supplemental jurisdiction conferred by Section 1367(a). But with Ernst's federal claims having been dismissed at this initial stage, the fundamental teaching of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)—still persuasive in the Section 1367(a) context (see, e.g., *Carr v. CIGNA Sec., Inc.,* 95 F.3d 544, 546 (7th Cir.1996))—calls for the dismissal of his state law claims as well (albeit without prejudice).

*Conclusion*

City's motion to dismiss Ernst's Complaint is granted in its entirety. When any Rule 12(b)(6) motion has proved successful (as City's has here), and when it also appears either (1) that the movant has identified a potentially curable flaw in a notice-type pleading or (2) that some other reason calls for the loser to be allowed to recast the insufficient pleading, this Court's regular practice is to grant leave to do so. But here the situation is patently different: It is crystal clear from Ernst's prolix submissions—his Complaint covering 16 pages plus exhibits (plainly an instance of fact pleading rather than notice pleading), followed by his detailed 42–page plus nine-exhibit (!!) response to City's dismissal motion—that he has already given the matter his best shot.

This is not then an appropriate case for allowing a return to the pleadings drawing board. This action is also therefore dismissed with prejudice as to all federal claims, but without prejudice as to Ernst's possible state law claims referred to in the preceding section of this opinion.